UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| _____ §<br>**BRANDON CALLIER,** §<br> §<br> §<br>**Plaintiff,** §<br> §<br>**v.** §<br> §<br>**TIP TOP CAPITAL INC.,** a New York §<br>Corporation and **VADIM SHTIVELMAN** §<br> §<br>**Defendant.** §<br>_____ § | **EP-23-cv-00437-KC** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.      Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2.      Defendant TIP TOP CAPITAL INC. ("Tip Top") is a corporation organized and existing under the laws of New York and can be served via registered agent THE Corporation, 3977 Nostrand Ave., Brooklyn, New York 11235.

3.      Defendant VADIM SHTIVELMAN is a natural person, managing partner of Defendant Tip Top, resident of New York, personally participated in the calls alleged herein and can be served at 12 Pine Road, Roseland, New Jersey 07068.

**JURISDICTION AND VENUE**

4.      Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. ¶ 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

5.      This Court has specific personal jurisdiction over Defendants because Defendants intentionally availed themselves of the state of Texas by intentionally directing phone calls into Texas when Plaintiff alerted Defendants the calls were unwanted and that the Defendants were not registered to telephone solicit Texas residents.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when Plaintiff received every single unauthorized call from Defendants is the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

7.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.      The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely

pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by

rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10.    The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(b). 47 U.S.C. § 227(b)(3).

11.    Separately, the TCPA bans telemarketing calls without a do-not-call policy available

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12.    The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13.    According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14.    The FCC also recognizes that "wireless customers are charged for incoming calls whether

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.    The FCC requires "prior express written consent" for all autodialed or prerecorded

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

16.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be

held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 951 – 52 (9th Cir. 2009).

19.     A corporate officer involved in the telemarketing at issue may be personally liable under

the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20.     Plaintiff personally and successfully registered his phone number ending in 4604 to the

National Do-Not-Call Registry ("DNC") in December 2007.

21.     Defendant Tip Top offers business loans and Merchant Cash Advances.

22.     Plaintiff received at least twenty (20) unauthorized calls to his personal cell phone ending in 4604 from Defendant Tip Top from October 10, 2023, to November 6, 2023, soliciting business funding.

23.     Each of the phone calls received by Plaintiff came from the phone number 732-963-8253 and displayed "BUSINESS FIN SE" on Plaintiff's caller identification.

24.     Plaintiff received the three phone calls between October 10, 2023, and October 12, 2023, that Plaintiff did not answer.

25.     On October 12, 2023, Plaintiff answered the fourth phone call and was solicited business bunding.  Plaintiff played along in order to determine who was behind the phone calls.

26.     On October 12, 2023, Plaintiff was sent an email from Julio Ramirez that listed Tip Top Capital as the company behind the phone calls.

27.     On October 12, 2023, Plaintiff sent a DNC request and demand letter via email to Defendant Tip Top regarding the unwanted phone calls.  This email was read multiple times as verified by Plaintiff's email read receipts.

28.     On October 23, Plaintiff sent a follow-up email and DNC request via email.

29.     Plaintiff continued to receive phone calls as outlined in Table A below.

30.     Each and every call at issue in this Complaint is a solicitation call marketing business funding.

31.     Table A shows the calls sent to Plaintiff by Defendant Tip Top.

TABLE A:

| Number | Date | Time | Caller ID | Notes |
|--------|------|------|-----------|-------|
| **1.** | 10/10/2023 | 2:22 PM | 732-963-8253 | Displayed "BUSINESS FIN SE" on caller ID |
| **2.** | 10/11/2023 | 12:23 PM | 732-963-8253 | Displayed "BUSINESS FIN SE" on caller ID |
| **3.** | 10/12/2023 | 9:04 PM | 732-963-8253 | Displayed "BUSINESS FIN SE" on caller ID |
| **4.** | 10/12/2023 | 3:23 PM | 732-963-8253 | Displayed "BUSINESS FIN SE" on caller ID |
| **5.** | 10/13/2023 | 11:37 AM | 732-963-8253 | Sent after DNC request |
| **6.** | 10/16/2023 | 9:08 AM | 732-963-8253 | Sent after DNC request |
| **7.** | 10/16/2023 | 9:09 AM | 732-963-8253 | Sent after DNC request |
| **8.** | 10/16/2023 | 11:13 AM | 732-963-8253 | Sent after DNC request |
| **9.** | 10/16/2023 | 1:00 PM | 732-963-8253 | Sent after DNC request |
| **10.** | 10/16/2023 | 1:01 PM | 732-963-8253 | Sent after DNC request |
| **11.** | 10/17/2023 | 1:44 PM | 732-963-8253 | Sent after DNC request |
| **12.** | 10/17/2023 | 1:44 PM | 732-963-8253 | Sent after DNC request |
| **13.** | 10/17/2023 | 1:45 PM | 732-963-8253 | Sent after DNC request |
| **14.** | 10/18/2023 | 10:39 AM | 732-963-8253 | Sent after DNC request |
| **15.** | 10/20/2023 | 9:21 AM | 732-963-8253 | Sent after DNC request |
| **16.** | 10/20/2023 | 9:22 AM | 732-963-8253 | Sent after DNC request |

| | | | | |
|---|---|---|---|---|
| **17.** | 10/23/2023 | 8:50 AM | 732-963-8253 | Sent after DNC request |
| **18.** | 10/31/2023 | 12:58 PM | 732-963-8253 | Sent after DNC request |
| **19.** | 11/06/2023 | 8:51 AM | 732-963-8253 | Sent after DNC request |
| **20.** | 11/06/203 | 8:52 PM | 732-963-8253 | Sent after DNC request |
| **21.** | 11/13/2023 | 9:30 AM | 732-963-8253 | Sent after DNC request |

32.     Plaintiff did not have a preexisting relationship with Defendants, had never been a customer of Defendants nor had ever applied for business funding or any other accounts with Defendants.

33.     Defendants placed multiple unauthorized phone calls to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

34.     On November 6, 2023, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and did not find any registration for any of the Defendants.

35.     Each of the phone calls alleged herein was made without a valid Texas telephone solicitation registration.

36.     No emergency necessitated any of the alleged calls.

37.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

**TEXAS BUSINESS AND COMMERCE CODE 302.101**

38.     Defendant Tip Top initiated the phone calls alleged herein and is a "seller" under the Texas Business and Commerce Code ("TBCC") because it makes telephone solicitation on its own behalf and called Plaintiff in this case.

39.     Under TCBB 302.302 "a person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation."

40.     The actions of Defendant Tip Top violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

41.     Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302."  Tex. Bus. & Com. Code § 302.303.

42.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

43.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made."  Tex. Bus. & Com. Code § 302.101(a).

44.     Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101

**PERSONAL LIABILITY OF DEFENDANT SHTIVELMAN**

45.     Defendant Shtivelman personally participated in the calls at issue because Defendant

Shtivelman personally directed the phone calls to be sent to Texas residents with Texas area codes.

46.     Defendant Shtivelman is the principal officer of Defendant Tip Top.

47.     Defendant Shtivelman closely holds Defendant Tip Top and is intimately involved in all decision-making and legal activities of Defendant Tip Top.

48.     Defendant Shtivelman has direct and personal involvement in and ultimate control over every aspect of Defendant Tip Top's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct.

49.     Defendant Shtivelman at all times relevant to this Complaint acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint,

50.     There is precedent in the Western District for holding corporate officers personally liable when they participate in the alleged actions:

> "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

> The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable."  *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity."  *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

> Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation

9

in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved.  Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.  As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct.  Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations.  They were the two persons who controlled all of Blastfax's day-to-day operations.  They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct.  And they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued to direct their company to send unsolicited intrastate fax advertisements.  This is far more than a simple derivative liability case.  Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit."  Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

51.    The Same Court held that corporate officers were also personally liable for DTPA

violations;

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees.  See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

52.    Defendant Shtivelman is the manager and owner of Defendant Tip Top and controls the

day-to-day operations of Tip Top and directed his employees, agents, salespersons, and solicitors

to make TCPA-violating phone calls.

10

53.     Defendant Shtivelman is not merely a bystander.  He is the mastermind who schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

54.     Defendant Shtivelman is well aware his conduct violated the TCPA and refused to alter the behavior.  Defendant Shtivelman is the principal director and officer of Defendant Tip Top and the only person with the power to make unlawful, fraudulent, and unethical behavior stop

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

55.     Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

56.     Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

57.     Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

58.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

59.     The calls were to Plaintiff's personal cell phone ending in 4604 which he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 16 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**COUNT ONE:**

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. §**

**64.1200(C))**

**(Against All Defendants)**

60.     Plaintiff realleges and incorporates the preceding paragraphs 1-59 as if fully set forth

herein.

61.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute

a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on

the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. §

64.1200(c)(2).

62.     Defendants and/or their agents, called Plaintiff's private residential telephone which was

successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days

prior to the alleged calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

63.     Plaintiff was statutorily damaged at least twenty-one (21) times under 47 U.S.C. §

227(c)(3)(F) by Defendant's calls described above, in the amount of $500 per call.

64.     Plaintiff is entitled to an award of at least $500 in damages for each such violation.  47

U.S.C. § 227(c)(5)(B).

65.     Plaintiff is entitled to an award of up to $1,500 in damages for each knowing or willful

violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT TWO:**

**(Violations of Texas Business and Commerce Code 302.101)**

**Failure to obtain a Telephone Solicitation Registration Certificate**

**(Against All Defendants)**

66.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-59.

67.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

68.     Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

69.     Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees.  **Texas Business and Commerce Code 302.302(d).**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1,500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against Defendants for twenty-one (21) calls;

E.      An award of $5,000 per phone call in statutory damages arising from intentional

violations of the Texas Business and Commerce Code 302.101 for twenty-one (21) calls;

F.      An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.      An award to Mr. Callier of interest, and costs, as allowed by law and equity;

H.      Such further relief as the Court deems necessary, just, and proper;


December 6, 2023,

                                          Respectfully submitted,

                                          /s/ Brandon Callier


                                          _____

                                          Brandon Callier
                                          Plaintiff, Pro Se
                                          1490A George Dieter Drive
                                          #174
                                          El Paso, TX 79936
                                          915-383-4604
                                          Callier74@gmail.com