IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | EP-23-CV-00437-KC |
| § | |
| **TIP TOP CAPITAL INC. and VADIM** § | |
| **SHTIVELMAN,** § | |
| § | |
| *Defendants*. § | |

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff Brandon Callier's ("Plaintiff") "Motion for Default Judgment" (ECF No. 9), filed on January 23, 2024. On February 12, 2024, United States District Judge Kathleen Cardone referred the motion to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's Motion for Default Judgment be **GRANTED in part** and **DENIED in part**.

I.   **FACTUAL BACKGROUND**

This case arises from alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiff asserts that he received twenty-one phone calls from Defendant Tip Top Capital Inc. ("Tip Top"), a financial services company, over the course of October 10, 2023, to November 13, 2023. Pl.'s Original Compl. ¶¶ 21–31, ECF No. 3.

Plaintiff has maintained his personal cell phone number, ending in -4604, on the National Do-Not-Call Registry since December 2007. *Id.* at ¶ 20. Plaintiff's cell phone is used for residential purposes. *Id.* at ¶ 59.

Plaintiff states that he received three phone calls between October 10, 2023, and October 12, 2023. *Id.* at ¶ 24. He did not answer these calls. *Id.* All the calls came from the same phone number, 732-963-8253, and displayed the same caller identification of "BUSINESS FIN SE." *Id.* at ¶ 23. Plaintiff received a fourth call on October 12, 2023, and answered the call "to determine who was behind the phone calls." *Id.* at ¶ 25. He received an email naming Tip Top as the company that was calling him. *Id.* at ¶ 26. On the same day, October 12, 2023, Plaintiff sent a do-not-call ("DNC") request and demand letter to Defendant. *Id.* at ¶ 27. "The email was read multiple times as verified by Plaintiff's email read receipts." *Id.* Plaintiff sent a follow-up DNC request on October 23, 2023, but continued to receive phone calls from Defendant until November 13, 2023. *Id.* at ¶¶ 28–29, 31.

## II.    PROCEDURAL HISTORY

On December 6, 2023, Plaintiff filed his Original Complaint, seeking relief against Tip Top and its managing partner, Vadim Shtivelman ("Shtivelman"), under the TCPA and Texas Business & Commerce Code Section 302.101 ("§ 302.101"). *See id.* He requested monetary damages in the amount of $1,500 per call for violations of 47 U.S.C. § 227(c) and $5,000 per call for violations of § 302.101. *Id.* at ¶¶ 60–69.

Upon Plaintiff's request, the Clerk of the Court issued a summons for Defendant. *See* Summons in a Civil Action, ECF No. 5. Plaintiff filed proof of executed summons, which indicated that the summons to Tip Top was delivered by hand on December 12, 2023, at 40 Exchange Place, New York City, NY 10005. *See* Proof of Service 2, ECF No. 6. Service was also executed at Shtivelman's address, 12 Pine Road, Roseland, NJ 07068, on December 14, 2023. *Id.* at 1.

Defendants had twenty-one days from service to answer, Fed. R. Civ. P. 12(a)(1)(A)(i), which meant that Tip Top's answer was due on January 2, 2024, and Shtivelman's answer was due on January 4, 2024. On January 11, 2024, after Defendants failed to timely answer or otherwise appear, Plaintiff requested entry of default against Defendants. *See* Req. Entry Default, ECF No. 7. On January 12, 2024, the Clerk of the Court entered default against Defendants. *See* Entry of Default, ECF No. 8. Plaintiff filed the current Motion for Default Judgment on January 23, 2024. *See* Pl.'s Mot. Default J., ECF No. 9. Defendants have not responded to the Motion or otherwise appeared in this matter.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs entry of default and default judgment. In ruling on a motion for default judgment, courts generally analyze the following three issues: (1) the procedural propriety of default judgment, (2) the substantive merits of the plaintiff's claims, and (3) the appropriate form of relief. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008); *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813–14 (N.D. Tex. 2015).

Procedurally, a defendant defaults if he or she fails to plead or otherwise timely respond to the complaint. Fed. R. Civ. P. 55(a); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). When default is shown "by affidavit or otherwise," the clerk of the court "must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default, the plaintiff may seek an entry of default judgment. *Id.* 55(b). Default judgment is "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes omitted). "[A] district court has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th

Cir. 1998). In deciding whether default judgment is procedurally proper, the court considers the following factors:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.* ("*Lindsey* factors").

Next, as to the merits of a motion for default judgment, the court accepts the plaintiff's well-pleaded allegations as true, except regarding damages. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *U.S. for Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Default judgment is appropriate only if the pleadings provide a "sufficient basis" for the judgment. *Nishimatsu*, 515 F.2d at 1206. In other words, "a defendant's default does not in itself warrant the court in entering a default judgment. . . . The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* Courts apply the Federal Rule of Civil Procedure 8 standard for the sufficient basis inquiry. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see also id.* n.3 ("Although most cases addressing Rule 8 arise in the context of a Rule 12(b)(6) motion to dismiss, . . . we decline to import Rule 12 standards into the default-judgment context.").

Finally, as to appropriate form of relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The court may conduct a hearing on a default judgment motion, as needed, to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.* 55(b)(2). A hearing on damages is required "unless the amount

4

claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction). The court must also confirm that the defendants were properly served. *See Rogers v. Hartford Life and Acct. Ins.*, 167 F.3d 933, 940 (5th Cir. 1999) ("When a district court lacks jurisdiction over a defendant because of improper service of process, the default judgment is void and must be set aside . . . .").

## IV.  DISCUSSION

### A. Jurisdiction and Venue

The Court has subject-matter jurisdiction over Plaintiff's TCPA claims because the TCPA is a federal statute. *See* 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's claims under the Texas Business & Commerce Code. *See* 28 U.S.C. § 1367(a).

1. <u>Service of Process on Tip Top</u>

A corporation can be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Additionally, a corporation can be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." *Id.* 4(h)(1)(A). Service may be carried out on an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is

made." *Id.* 4(e)(1). "Texas law authorizes service on a corporation through the corporation's registered agent, president, or vice president." *Lawson v. GEICO*, No. 5:15–CV–481, 2015 WL 6161247, at *2 (W.D. Tex. Oct. 19, 2015). New York law authorizes personal service on a domestic corporation by serving "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. 311 (McKinney).

In the proof of service, Plaintiff states that he served "'John Doe' [who] refused to give [a] name but stated that he was the manager (Maven Huffman)." Proof of Service 2. Plaintiff provided additional information: "Successful Attempt: Dec 12, 2023, 12:31 pm EST at 40 EXCHANGE PLACE, NEW YORK CITY, NY 10005 received by John doe. Age: 45; Ethnicity: Caucasian; Gender: Male; Weight: 180; Height: 5'11"; Hair: Black; Eyes: Brown; Other: The manager, Maven Huffman did not want to give me his name." *Id.* Although it is not completely clear, it seems that Plaintiff served the summons and complaint on Maven Huffman. Maven Huffman is an account manager at Tip Top[1] but is not listed as an officer or registered agent of Tip Top. The only officer or agent provided by the New York Department of State Division of Corporations website is Shtivelman.[2] Further, the principal—and only—office address for Tip Top is listed as 3977 Nostrand Avenue, Brooklyn, N.Y. 11235. Thus, it appears that the process server also went to the incorrect address.

Since the summons and complaint were not left with an officer, director, or other agent authorized by law to receive them, Tip Top was not served correctly under the Federal Rules. This Court cannot exercise personal jurisdiction over Tip Top. *See Dan-Bunkering (America), Inc. v.*

---

[1] Maven Huffman, Linkedin, https://www.linkedin.com/in/maven-huffman?original_referer=https%3A%2F%2Fwww.google.com%2F (last visited Feb. 12, 2024).
[2] *Search Our Corporation and Business Entity Database*, N.Y. Dep't of State, Div. of Corps., https://apps.dos.ny.gov/publicInquiry/ (search "Tip Top Capital Inc.") (last visited Feb. 12, 2024).

*Ichor Oil,* LLC, 561 F. Supp. 3d 710, 714 (N.D. Tex. 2021) ("A federal court lacks personal jurisdiction over a defendant unless the defendant was served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure."). Therefore, the Court cannot recommend that a default judgment be entered against Tip Top. *See id.* at 716 ("[A] default judgment rendered upon defective service will not stand.") (citation omitted).

  2. Personal Jurisdiction Over and Service of Process on Shtivelman

The next issue is whether the Court can exercise personal jurisdiction over Shtivelman. There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). General personal jurisdiction over an individual exists in the place where the individual's domicile is located. *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Shtivelman is a resident of New York, according to Plaintiff's complaint. Pl.'s Original Compl. ¶ 3. Thus, the Court cannot exercise general personal jurisdiction over Shtivelman.

For specific jurisdiction, the suit must arise out of the defendant's contacts with the forum. *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "[A] federal court may assert personal jurisdiction if the state long-arm statute permits jurisdiction and the exercise of such jurisdiction would not violate due process. . . . Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019) (internal quotes and citation omitted). The analysis requires addressing whether the defendant established minimum contacts with Texas and whether exercising personal jurisdiction over the defendant in Texas would not "offend traditional notions of fair play and substantial justice." *Id.* (citation omitted).

In order for minimum contacts to exist, the defendant must have "purposefully directed his activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (cleaned up). "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Additionally, the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with people that reside there." *Id.* at 285. "[T]he defendant's conduct and contact with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "[P]ersonal jurisdiction over individual officers and employees of a corporation may not be predicated on the federal court's jurisdiction over the corporation itself, unless the individuals are engaged in activities within the forum court's jurisdiction that would subject them to the application of the state's long-arm statute." *Cunningham v. Florio*, No. 417CV00839ALMCAN, 2018 WL 4473792, at *11 (E.D. Tex. Aug. 6, 2018) (citation omitted), *report and recommendation adopted*, No. 4:17-CV-839, 2018 WL 4473096 (E.D. Tex. Sept. 18, 2018). A plaintiff must plead that the defendant took "individualized conduct" in the forum state, such as "personal involvement in the alleged calls." *Id.*

In one case, the plaintiff alleged that the individual defendants "had direct, personal participation in causing the illegal phone calls to be made as well as they directly authorized the illegal telemarketing calls to be made." *Cunningham v. Loc. Lighthouse Corp.*, No. 3:16-CV-02284, 2017 WL 4053759, at *3 (M.D. Tenn. Aug. 7, 2017), *report and recommendation adopted*, No. 3:16-CV-02284, 2017 WL 4022996 (M.D. Tenn. Sept. 13, 2017). The plaintiff also accused the defendants of failing to implement policies and procedures to comply with the TCPA, failing to alter their business practices to comply with the TCPA, and authorizing and ratifying the calls

8

...

at issue. *Id.* However, the defendants asserted in affidavits that they had no contacts with the forum state of Tennessee, never directed any individual to call the plaintiff, and never personally called or contacted the plaintiff. *Id.* The plaintiff conceded that the defendants did not themselves make any phone calls to the forum state but argued that personal jurisdiction existed based on the defendants' actions as "corporate officers and owners" of the company. *Id.* The court concluded that it could not exercise personal jurisdiction over the defendants and that the defendants' motion to dismiss should be granted. *Id.* at *4. The court stated that "[p]ersonal jurisdiction must be established based upon corporate officers' individual acts on behalf of the corporation" such as personally sending emails or designing and implementing all the offending telemarketers' activities. *Id.* at *3.

In a different TCPA case, the plaintiff asserted that the individual defendant was subject to personal jurisdiction in the forum state because the defendant directed or conspired to direct the phone calls to the state. *Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011, 1019 (D.N.M. 2020). The plaintiff also alleged that the defendant authorized the calls, directly or indirectly controlled the persons who initiated the calls, allowed telemarketers access to the company's information and operating systems, and approved, wrote, or reviewed the scripts used by the telemarketers during the calls. *Id.* at 1020. The defendants brought up *Local Lighthouse*, but the court distinguished the two cases because the defendants in *Local Lighthouse* provided "affidavits in which they specifically refuted the allegations through which the plaintiff attempted to link the defendants to the calls at issue." *Id.* at 1019. The court concluded, "Unlike the courts in each of those cases, this Court must accept as true Plaintiff's well-pled allegations that connect [the defendant] to the calls to Plaintiff and construe them in the light most favorable to Plaintiff." *Id.* at 1020. Therefore,

the plaintiff had "met his burden of making a *prima facie* showing of specific jurisdiction over" the defendant. *Id.* at 1021.

The instant case is similar to *Mestas*. Shtivelman has defaulted, which means that he has admitted all of Plaintiff's allegations to be true. Plaintiff alleges that "Shtivelman personally directed the phone calls to be sent to Texas residents with Texas area codes." Pl.'s Original Compl. ¶ 45. Plaintiff also alleges that Shtivelman "is intimately involved in all decision-making and legal activities of Defendant Tip Top" and "Shtivelman has direct and personal involvement in and ultimate control over every aspect of Defendant Tip Top's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct." *Id.* at ¶¶ 47–48. These allegations, accepted as true, are enough to establish the calls made to Plaintiff as constituting Shtivelman's minimum contacts with Texas.

Notions of fair play and substantial justice would not be offended by the Court's exercise of personal jurisdiction. The five factors the Fifth Circuit has identified when considering whether it is reasonable to exercise personal jurisdiction are:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

*Rogers v. Nat'l Car Cure, LLC*, 636 F. Supp. 3d 762, 771 (S.D. Tex. 2022) (citation omitted). The court in *Rogers* concluded that its exercise of personal jurisdiction over a TCPA defendant was reasonable because "Texas has an interest in litigation enforcing its telephone consumer protection laws, and [the] [p]laintiff would be inconvenienced if required to litigate his claims in [the defendant's] preferred state." *Id.* Additionally, the Rogers court held that "enforcement of state telephone consumer protection laws could be frustrated if plaintiffs as a group were forced to travel

10

to the defendants' preferred state." *Id.* The same considerations apply here, and Shtivelman has not made a case for why personal jurisdiction would not be reasonable. Therefore, the Court has personal jurisdiction over Shtivelman.

For service of process, a plaintiff can serve an individual inside the United States by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). The process server specified that he left the process server served the summons and complaint on the individual defendant personally at 12 Pine Road, Roseland, N.J. 07068, which is Shtivelman's place of abode.[3] Proof of Service 1; Pl.'s Original Compl. ¶ 3. Thus, the Court concludes that Shtivelman was properly served.

Venue is proper in this District because it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2); *see* Pl.'s Original Compl. ¶ 6. Plaintiff resides in the Western District of Texas and received all of the calls while in this District. Pl.'s Original Compl. ¶ 6.

**B. Procedural Propriety**

Default judgment against Shtivelman is procedurally appropriate. There are no material issues of fact at issue in the case, given that Shtivelman has defaulted and filed no responsive pleadings. *See Cunningham v. Greenstar Cap. Sols., LLC*, No. 4:18-CV-000161-ALM-CAN, 2018 WL 4572711, at *3 (E.D. Tex. Aug. 1, 2018) ("When a defendant defaults, he admits to the plaintiff's well-pleaded allegations of fact, and therefore, there are no material issues of fact.") (citation omitted), *report and recommendation adopted*, No. 4:18-CV-161, 2018 WL 4567706

---

[3] In the "Additional Information" section, the process server stated that he served "Adim Shtivelman," not "Vadim Shtivelman." Proof of Service 1. However, "[a] signed return of service constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence." *People's United Equip. Fin. Corp. v. Hartmann*, 447 F. App'x 522, 524 (5th Cir. 2011) (citation omitted). Thus, since the process server signed the proof of service, where he indicated that he personally served Shtivelman, the Court will presume that this was just a typo.

(E.D. Tex. Sept. 24, 2018). Plaintiff has been prejudiced and will continue to be prejudiced by the delay in this case due to Shtivelman's failure to timely answer and defend the case. The grounds for default are clearly established. As discussed, Shtivelman failed to timely respond to the Complaint, Plaintiff moved for default, and the Clerk of the Court entered default against Shtivelman. Plaintiff then filed his Motion for Default Judgment. There is no evidence that Shtivelman's default was caused by a good faith mistake or excusable neglect. Default judgment against Shtivelman would not be unduly harsh, given that Shtivelman has been given notice and opportunity to respond to this action. Lastly, there is not any basis on which a court would think itself obliged to set aside Shtivelman's default. Thus, all the *Lindsey* factors are satisfied.

**C. Substantive Merits**

1. Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)

47 U.S.C. § 227(c)(5) provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action "in an appropriate court." The "regulations prescribed under this subsection" are codified at 47 C.F.R. § 64.1200. 47 C.F.R. § 64.1200(c)(2) makes it an offense to "initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

Courts within the Fifth Circuit have come out both ways on the question of whether a cellular telephone can be considered a residential telephone for purposes of 47 C.F.R. § 64.1200. *Compare Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *5–6 (W.D. Tex. May 10, 2021), *with Strange v. ABC Co.*, No. CV 19-1361, 2021 WL 798870, at *3 (W.D. La. Mar. 1, 2021). However, there is no "binding precedent that would foreclose Plaintiff's allegations,

as pleaded, under the TCPA." *Myrick v. Adapthealth, LLC*, No. 6:22-CV-00484-JDK, 2023 WL 5162396, at *2 (E.D. Tex. June 26, 2023), *report and recommendation adopted*, No. 6:22-CV-484-JDK, 2023 WL 4488848 (E.D. Tex. July 12, 2023).  Further, the Federal Communications Commission has argued in favor of extending TCPA protections to cell phones. *Id.* at *3 (citing *In re Rules & Reguls. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14039, 2003 WL 21517853 (FCC June 26, 2003)).  This Court agrees with other courts in the Fifth Circuit that have held that a cellular telephone number qualifies as a residential number under the TCPA as long as the plaintiff alleges sufficient facts to make it clear that his cellular telephone is used for residential purposes. *See id.*; *Strange*, 2021 WL 798870, at *4; *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *3 (N.D. Tex. Feb. 24, 2022).

Plaintiff has confirmed that his cellular phone is a residential number.  Pl.'s Original Compl. ¶ 59.  He asserts that his cellular phone is used "for personal, family, and household use" and is the primary way that he contacts friends and family. *Id.* He also states that this phone is "registered in his personal name" and paid for "from his personal accounts." *Id.* The phone was registered on the national do-not-call registry during the relevant time period.  Pl.'s Original Compl. ¶ 20.  Plaintiff has also stated that he received more than one call in a 12-month period. *Id.* at ¶ 22.

"[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001). Individuals who were the "'guiding spirits' and the 'central figures' behind the TCPA violations" and who controlled the day-to-day operations of the company that violated the TCPA can be held liable for those violations. *Id.* Corporate officers cannot be held liable simply on the

13

basis of their employment status, however. *Amadasun v. Datasearch, Inc.*, No. SA-19-CV-01130-XR, 2020 WL 3579900, at *2 (W.D. Tex. Feb. 19, 2020).

Here, Plaintiff has done enough to establish Shtivelman's personal liability. He asserts that Shtivelman "closely holds . . . Tip Top and is intimately involved in all decision-making and legal activities of . . . Tip Top." Pl.'s Original Compl. ¶ 47. He also asserts that Shtivelman is directly and personally involved in and oversees "every aspect of . . . Tip Top's wrongful conduct that violated the TCPA." *Id.* at ¶ 48. Thus, Plaintiff has alleged that Shtivelman was the central figure behind Tip Top's TCPA violations, and Shtivelman can be held personally liable for them. As such, Plaintiff has pleaded enough to establish a sufficient basis for default judgment for the twenty-one calls received.

2. Violation of Texas Business & Commerce Code § 302.101

Section 302.101 makes it a violation for "a seller" to "make a telephone solicitation . . . to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101.

Plaintiff has failed to plead that Shtivelman is liable under § 302.101. In his original complaint, Plaintiff asserts only that Tip Top is liable for violating § 302.101 for making telephone solicitations without a Texas registration certificate. Pl.'s Original Compl. ¶¶ 38–44. For example, Plaintiff asserts, "Defendant Tip Top initiated the phone calls alleged herein. . . ." *Id.* at ¶ 38. He adds, "[t]he actions of Defendant Tip Top violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State." *Id.* at ¶ 40. Later, Plaintiff states that "[t]he foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered

14

solicitation calls to Plaintiff's cellular telephone number without his prior express written consent." *Id.* at ¶ 67.

The Fifth Circuit draws from caselaw on Federal Rule of Civil Procedure 8 in determining whether a claim is well-pleaded and sufficient. *Wooten*, 788 F.3d at 498. Rule 8 requires that a pleading have "a short and plain statement of the claim" in order "to 'give the defendant fair notice of what the . . . claim is." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Additionally, there must be enough factual allegations to "raise the right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 544). Plaintiff's complaint does not provide factual allegations that Shtivelman violated § 302.101 and would not give Shtivelman notice that Plaintiff is accusing him of violating § 302.101. As a result, the Court recommends finding that Plaintiff has not established a claim against Shtivelman for violating § 302.101.

### D. Entitlement to Damages

If no hearing regarding the amount of damages is held, then damages must be proven "by detailed affidavits establishing the necessary facts." *United Artists Corp.*, 605 F.2d at 857. No hearing has been held on damages here. Even so, the amount of damages available to Plaintiff is capable of mathematical calculation, and Plaintiff has provided these calculations in his Motion for Default Judgment and attached affidavit. *See* Pl.'s Mot. Default J.; Aff. Supp. Default J., ECF No. 9-2. Plaintiff seeks damages in the amount of $133,052.00, based on $500 each for 4 violations of § 227(c), $1,500 each for 17 violations of § 227(c), and $5,000 each for 21 violations of § 302.101, along with $402 in filing fees and $150 in service fees. Aff. Supp. Default J. 1–2.

47 U.S.C. § 227(c)(5) authorizes private rights of action under the TCPA. An individual can file suit to recover his actual monetary losses or to receive $500 in damages for each violation. 47 U.S.C. § 227(c)(5)(B). Through the allegations in the Original Complaint, Plaintiff has shown

that Shtivelman is liable for four phone calls that violated § 227(c). As such, Plaintiff is entitled to $2,000.

The same subsection also contains a provision allowing for treble damages if the defendant's violation is willful and knowing. 47 U.S.C. § 227(c)(5). "The Federal Communications Commission has interpreted 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *Am. Blastfax*, 164 F. Supp. 2d at 899. Plaintiff alleges that he sent a do-not-call request and a demand letter to Tip Top via email after he received the fourth unwanted phone call, on October 12, 2023. Pl.'s Original Compl. ¶ 27. He alleges that the email "was read multiple times as verified by Plaintiff's email read receipts." *Id.* He also states that he sent a follow-up email with a new do-not-call request on October 23, 2023. *Id.* at ¶ 28. Plaintiff further adds that "Shtivelman is well aware his conduct violated the TCPA and refused to alter the behavior." *Id.* at ¶ 54. Thus, Plaintiff has established that Shtivelman is personally liable for any willful and knowing violations of the TCPA. The Court recommends that Plaintiff be awarded treble damages for the seventeen calls made after October 12, 2023, for a total of $25,500.

Plaintiff also requests $105,000 in total for Defendant's twenty-one violations of § 302.101. Aff. Supp. Default J. 1. However, as discussed above, Plaintiff has not pleaded sufficiently to establish Shtivelman's liability under § 302.101. As such, the Court recommends denying Plaintiff damages under § 302.101.

Lastly, Plaintiff seeks $402 in filing fees and $150 in service fees. *Id.* at 2. However, filing fees and fees on private process servers are not recoverable under the TCPA. *See Cunningham v. Greenstar Cap. Sols. LLC*, No. 4:18-CV-000161-ALM-CAN, 2018 WL 4572711, at *8 (E.D. Tex.

Aug. 1, 2018) ("Plaintiff has not demonstrated that the TCPA allows for recovery of court costs. . . . Furthermore, Plaintiff is not entitled to recover any fees incurred on private service of process."), *report and recommendation adopted*, No. 4:18-CV-161, 2018 WL 4567706 (E.D. Tex. Sept. 24, 2018). As a result, Plaintiff is not entitled to recover his court costs or service fees.

## V. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff Brandon Callier's Motion for Default Judgment be **GRANTED in part** and **DENIED in part** and that he be awarded $27,500 as damages for Defendant Vadim Shtivelman's violations of 47 U.S.C. § 227(c).

**SIGNED** this 22nd day of March, 2024.

_____
**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**